**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBIN N. JOHNSON,

                  Plaintiff,

vs.                                       Case No. 3:14-cv-760-J-34JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                  Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

### I.  Status

Robin N. Johnson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is a result of "femoral patella syndrome left knee," "arthritis," "fibromyalgia," "previous spinal fracture," "hypertension," "depression," "[type] 2 diabetes," "asthma," and "shattered vert[e]bra[.]" Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed September 11, 2014, at 132, 141, 152-53 (some capitalization omitted); see also Tr. at 155, 166, 347.  On January 18, 2011, Plaintiff filed an application for DIB, alleging an onset disability date of September 24, 2010, Tr. at 300-01, and on March 17, 2011, Plaintiff filed an application for SSI, alleging the same onset disability date, Tr. at 302-09.  Plaintiff's

---

[1]      Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document.  Failure to file timely objections waives a party's right to de novo review.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a); see also Dupree v. Warden, 715 F.3d 1295, 1300 (11th Cir. 2013).

applications were denied initially, see Tr. at 150, 176-81 (DIB), 151, 182-88 (SSI), and were denied upon reconsideration, see Tr. at 174, 193-97, 203 (DIB), 175, 198-202, 204 (SSI).

On September 27, 2012, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 60-131.  The ALJ then held a second hearing on January 31, 2013, during which Plaintiff (still represented by counsel) and a second VE testified.  Tr. at 33-59.  Following the hearings, the ALJ issued a Decision on February 28, 2013, finding Plaintiff not disabled through the date of the Decision.  Tr. at 18-27.

On May 1, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.  On June 30, 2014, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff advances two arguments on appeal.  See Plaintiff's Initial Brief (Doc. No. 14; "Pl.'s Br."), filed November 11, 2014, at 17-25.   First, Plaintiff argues the ALJ erred in discounting sworn deposition testimony of Michael Edwards, D.O., Plaintiff's treating primary care physician.  Id. at 17-22.  Second, Plaintiff contends the ALJ improperly assessed her residual functional capacity ("RFC") and failed to include certain limitations in the hypothetical to the VE. Id. at 22-24. On February 11, 2015, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") responding to Plaintiff's arguments.  After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned recommends that the Commissioner's final

decision be reversed and remanded for further proceedings for the reasons stated in this Report and Recommendation.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 20-27.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 24, 2010, the alleged onset date."  Tr. at 20 (emphasis and citation omitted).  At step two, the ALJ found that "[Plaintiff] has the following severe impairments: fibromyalgia, obesity, left knee osteoarthritis, left knee patellofemoral syndrome, and asthma."  Tr. at 20 (emphasis and citation omitted).  At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the

---

[2]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she can occasionally climb ramps/stairs, balance, stoop, kneel, and crouch. She should never crawl or climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to fumes, odors, dusts, gases, and hazards (i.e. machinery, unprotected heights, parts, etc.). She is limited to jobs involving no more than frequent judgment or decision-making, and to no production rate for pace of work.

Tr. at 21 (emphasis omitted). At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work" as a "nurse-general" and a "staff community health nurse." Tr. at 25 (some emphasis and citations omitted). At step five, after considering Plaintiff's age ("38 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 26 (emphasis and citations omitted), including "Route Clerk," "Collator Operator," and "Paramutual Ticket Cashier[.]" Tr. at 26. The ALJ concluded that Plaintiff "has not been under a disability . . . from September 24, 2010, through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320,

1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As summarized above, Plaintiff challenges the ALJ's discounting of Dr. Edwards' opinion and the RFC determination that was incorporated into the hypothetical presented to the VE.  The undersigned addresses Plaintiff's first argument and concludes the ALJ committed reversible error, necessitating remand, in discounting Dr. Edwards' opinion. Given this conclusion, and given that reconsideration of the evidence in light of the Court's overall findings is likely to impact the findings at which Plaintiff's remaining argument on appeal is aimed, it is unnecessary to substantively address Plaintiff's remaining argument. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to

address certain issues because they were likely to be reconsidered on remand); <u>Demenech</u>

<u>v. Sec'y of the Dep't of Health & Human Servs.</u>, 913 F.2d 882, 884 (11th Cir. 1990) (per

curiam) (concluding that certain arguments need not be addressed when the case would be

remanded on other issues).  A discussion follows.

### A.  Parties' Arguments

Plaintiff contends that the ALJ did not articulate with the requisite specificity his

reasons for discounting Dr. Edwards' opinions.  <u>See</u> Pl.'s Br. at 19.  Additionally, Plaintiff

contends that the reasons given by the ALJ for discounting the opinions are not supported

by substantial evidence in the record.  <u>See</u> <u>id.</u> at 19-22.  Defendant disagrees, arguing that

the ALJ articulated specific reasons, supported by substantial evidence, for discounting the

opinion.  Def.'s Mem. at 4-12.  Says Defendant, "[w]hile the ALJ did not restate every piece

of inconsistent evidence when addressing Dr. Edwards' specific findings, the ALJ properly

reviewed, discussed, considered and cited the exhibits and records containing this evidence

in the text of his [D]ecision."  <u>Id.</u> at 8 (citing Tr. at 21-25).

### B.  Applicable Law

The Regulations instruct ALJs how to properly weigh the medical opinion[3] of a treating

physician.[4]  <u>See</u> 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the

---

[3]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); <u>see also</u> 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[4]     A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the

(continued...)

medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we

---

[4](...continued)
medical condition. See 20 C.F.R. § 404.1502.

receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'"  Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

## C.  Dr. Edwards' Notes, Other Physicians' Related Notes, and Dr. Edwards' Opinion

Dr. Edwards has been Plaintiff's treating primary care physician at Family Practice Associates since at least July 2010.  See, e.g., Tr. at 546-78, 600-29, 631-38, 668-72.  On September 26, 2012, Dr. Edwards gave a sworn oral deposition for Plaintiff's social security claim. Tr. at 863-893.[5] Although Plaintiff has been a patient at Family Practice Associates since 2008, Dr. Edwards testified, and the administrative transcript confirms, that he

---

[5]       During the deposition, Plaintiff's counsel asked the questions.  Tr. at 866-88.  As no one appeared on behalf of the Administration, Tr. at 864, Dr. Edwards was not cross examined.

personally has been treating Plaintiff since at least July 2010, Tr. at 425, 868,[6] about two months prior to Plaintiff's alleged onset disability date of September 24, 2010, Tr. at 300, 302.  Dr. Edwards testified that during the two years between Plaintiff's alleged onset date and his deposition, he gave numerous diagnoses, the most relevant to the instant appeal being "[a]rthritis of the knee, arthritis of the shoulder, arthritis of the back, fibromyalgia[,] . . . depression[,] . . . [and] sleep apnea[.]"  Tr. at 869.

Plaintiff alleges her disability began on September 24, 2010, after she injured her knee.  Tr. at 79-80, 559.  During the course of three days during the week of September 24, 2010, Plaintiff actually had a number of incidents involving her knee, one while "doing some stuff with [her] horse," one while "spen[ding] some time with [her] husband," and one "dancing[.]"  Tr. at 79-80.  The administrative transcript confirms that Dr. Edwards saw Plaintiff on September 27, 2010, during which she complained, among other things, of knee pain that began "while dancing 2 nights ago."  Tr. at 559.

There is consistent documentation of Plaintiff's knee pain and other pain and corresponding treatment throughout the notes of Dr. Edwards and Family Medical Practice Associates.  See, e.g., Tr. at 559 (September 27, 2010 note documenting knee pain and containing a plan of a knee injection), 558 (October 4, 2010 note documenting knee pain, clicking, and "giving away" and failure of steroid injection to alleviate symptoms), 557

---

[6]       There are quite a few treatment notes pre-dating July 2010 that appear to have the same or a similar signature as Dr. Edwards, although the signatures (and some of the notes) are illegible.  See, e.g., Tr. at 426–29, 432-36.  Dr. Edwards testified in his deposition that his earliest known date of treatment is July 22, 2010.  Tr. at 867-68.  While he "may have seen her earlier" than that date, and he has a "recollection of taking care of her previous to that [date]," he was unable to say for sure when he began to treat Plaintiff because the practice's "new electronic medical record . . . dat[es] only back as far as when [the practice was] using that as billing software[.]" Tr. at 868.

(October 12, 2010 note documenting persistent knee pain, failure of steroid injection and ibprofen to alleviate pain, referral to an orthopaedist for an MRI, and prescription of anti-inflammatory drug diclofenac[7]), 555 (December 10, 2010 note documenting knee pain; Plaintiff's treatment by an orthopedist; and prescription of narcotic-like pain reliever tramodol[8] and another illegible drug), 552 (March 21 or 25, 2011 note[9] documenting "OA knee" and "patellofemoral pain syndrome" and prescription of voltaren (or diclofenac[10]), among other illegible things), 615-16 (September 16, 2011 note documenting telephone call from Plaintiff stating that the tramadol was "not enough" and she "nee[ed] to take 8 pills daily" and a refill authorization request for tramadol), 614 (October 13, 2011 note documenting "knee pain still [illegible]"), 611 (October 21, 2011 note documenting telephone call from Plaintiff stating that she "saw ortho wed & [was] put on pain patch"), 610 (October 27, 2011 note documenting knee pain and prescription of pain patch), 607 (February 24, 2012 note documenting knee pain), 606 (February 28, 2012 note documenting knee pain, "O/A," and a prescription of Butrans pain patch[11]), 604 (March 27, 2012 note documenting refill of Butrans pain patch and Plaintiff's report of "many pain free days"), 601 (April 19, 2012 note documenting "adequate" pain control), 633-34 (June 18, 2012 request for refill of Butrans patch and corresponding

---

[7]     "Diclofenac is used to treat mild to moderate pain, or signs and symptoms of osteoarthritis or rheumatoid arthritis." www.drugs.com/diclofenac.html (last visited July 5, 2015).

[8]     See www.drugs.com/tramadol.html (last visited July 5, 2015).

[9]     Near the top of this note, it is dated March 25, 2011, but near the bottom, it appears to be dated March 21, 2011.  See Tr. at 552.

[10]    See www.drugs.com/voltaren.html (last visited July 5, 2015).

[11]    "The Butrans skin patch is used to treat moderate to severe chronic pain around the clock." www.drugs.com/butrans.html (last visited July 5, 2015).  It "contains buprenorphine, an opioid pain medication." Id.

prescription), 631 (July 16, 2012 note indicating refills were needed of Butrans patch and voltaren), 669 (August 14, 2012 prescription for refill of Butrans patch).

There are also notes and other evidence in the administrative transcript from the various specialists that Plaintiff saw for her knee pain. See Tr. at 665-66 (November 15, 2010 note documenting orthopaedic evaluation for left knee pain), 652-64 (December 2, 2010 through March 2, 2011 follow up visits with orthopaedic associates for left knee pain), 833-35, 514-16 (duplicate) (April 8, 2011 letter and attached notes from orthopaedist Aaron M. Bates, M.D. to Dr. Edwards discussing Plaintiff's left knee problems), 513 (June 8, 2011 note by Dr. Bates regarding a follow up visit for left knee pain and diagnosing left knee inflammatory arthritis/osteoarthritis and left knee patellofemoral syndrome), 823 (October 19, 2011 note by Dr. Bates regarding a follow up visit and treatment with a Flector patch). Additionally, there is significant documentation of Plaintiff's participation in physical therapy for her joint and knee pain from October 2010 through January 2011.  Tr. at 773-822.

The administrative transcript further confirms that Plaintiff was diagnosed with fibromyalgia in 2001, Tr. at 492, and contains treatment notes and other evidence dated February 2011 through September 2011 documenting treatment for and lab results regarding fibromyalgia by Baptist Primary Care -- Rheumatology.  Tr. at 486-508, 589-94.  The treatment included injections and taking medications Cymbalta and Savella. Tr. at 486-495, 589-94.

During Dr. Edwards' deposition, he gave numerous opinions regarding Plaintiff's conditions and their effect on her ability to perform job-related functions. Tr. at 863-93. The following is a summary of most of his testimony regarding these issues:

- Plaintiff has complained to Dr. Edwards of not being able to do "simple tasks" and her "pleasure activities [being] much impaired," Tr. at 870

- On physical examination, Plaintiff demonstrates "poor range of motion of her shoulders, she has a limp, she has a stoop posture, she has difficulty ambulating for prolonged distances," Tr. at 870

- Dr. Edwards has seen Plaintiff have to "stop and hold herself on the wall" while traveling approximately 30 feet from an exam room to a checkout desk "because she was having difficulty with pain, her knee giving out," Tr. at 870-71

- Plaintiff's fibromyalgia carries associated issues of "depression, . . . myofascial pain, . . . sleep disturbances, . . . general sense of malaise, pain . . . in those planes of tissue that are affected with repetitive motion, also pain with prolonged activity such as sitting in a desk or chair position for a long period of time, Tr. at 871

- Plaintiff's sleep apnea, "even if she's compliant with her CPAP machine," could affect her ability to perform work-related functions "if she's not getting restorative sleep on her narcotics," Tr. at 874

- Plaintiff also experiences Methicillin-resistant Staph aureus (MRSA) because "she has a large amount of redundant tissue due to her morbid obesity and in those skin folds bacteria that is trapped can grow and abscess and cause problems" which can be "painful, . . . unsightly, [and] unsanitary to be around other people in a contact-type job such as a healthcare field or childcare," Tr. at 875

- Plaintiff's physical therapy attempts have produced "variable results," Tr. at 877

- Plaintiff has been switched from the Butrans patch to "Fentanyl transdermal, which is a different narcotic, unfortunately a much stronger one due to intolerance to Butrans," and as a result, Plaintiff is "most likely not safe to handle medications for patients due to the potential for a grievous medical error, due to her impaired concentration, and . . . [her inability during examinations] to finish and formulate a full thought," Tr. at 877-89

- Plaintiff's inability to concentrate prevents her from being able to perform even simple repetitive tasks, such as simultaneously answering a phone and taking a note, and the inability to concentrate would persist "at least

50 percent if not greater" of a typical work day (based, in part, on his personal observation of Plaintiff's impaired concentration for 15 out of 20 minutes during Plaintiff's most recent office visit), Tr. at 879-81

• Plaintiff cannot walk 30 feet without a break; she "shifts position during a 20-minute office visit up and out of the chair and down for comfort's sake and concentration's sake two and three times," Tr. at 881

• Plaintiff cannot sit for six hours over an eight-hour workday and would "be pushing it" to try to sit for four hours per workday; Plaintiff could stand and walk maybe two hours per workday, Tr. at 881-82

• Plaintiff has "expressed to [Dr. Edwards] that she needed to lay down two to three times in an hour . . . during pleasure activities," Tr. at 883

• Plaintiff has "probably at best a few hours of useful function during a day," Tr. at 883

• Plaintiff can do minimal lifting and carrying but could lift "nominal weight," Tr. at 883-85

• Plaintiff cannot twist, stoop, bend, or crouch during the workday, Tr. at 885-86

• Plaintiff's pain and side effects of her medications, combined with "repeated cellulitises and abscesses," would likely make her miss more than three days per month of work, Tr. at 886

• Plaintiff's "prognosis is unfortunate" due to "limited resources," "morbid obesity," "diabetes," and "asthma"; Plaintiff has "a poor prognosis for meaningful return to function short of a relatively heroic measure such as a gastric bypass to massively change her metabolic and physical situation," Tr. at 887-88

## D. ALJ's Decision / Analysis

The ALJ summarized Dr. Edwards' deposition testimony, Tr. at 24-25, and then discounted it, finding as follows:

Dr. Edwards['] testimony is not generally supported by his own treatment records and is therefore given little weight. Furthermore, the majority of his testimony pertains to [Plaintiff's] ability to return to her past work as a nurse and does not address other occupations. For example, Dr. Edwards noted that

> [Plaintiff] was doing generally well with normal examination findings in May 2011 following a hospitalization for a superficial blood clot in her left leg. The records also note that [Plaintiff] requested a fun game for weight loss as she weighed 255 pounds. Other treatment records note ongoing left knee pain. However, there was really no change in her medication regimen, no surgical recommendations, and nothing other than conservative treatment following her completion of physical therapy. In September 2010, [Plaintiff] reported that she hurt her knee dancing and on another occasion, she hurt herself while trying to mount a horse. These activities are simply inconsistent with Dr. Edward[s'] testimony that [Plaintiff] can barely walk the halls of his office and is unable to perform even sedentary work.

Tr. at 25 (citations omitted).

The ALJ's reasons for discounting Dr. Edwards' opinion are not supported by substantial evidence. Initially, the ALJ found that the opinion is inconsistent with Dr. Edwards' notes. Tr. at 25. To support this finding, the ALJ relied upon the following: 1) one treatment note from May 2011 that documents "normal examination findings" after Plaintiff was seen in the emergency room for a blood clot; 2) one occasion in which Plaintiff asked for a "fun" weight loss game; 3) there being "no change in her medication regimen"; 4) there being "no surgical recommendations"; and 5) there being "nothing other than conservative treatment following her completion of physical therapy." Tr. at 25.

The ALJ's reliance on one treatment note that essentially documented a check up visit after Plaintiff's emergency room visit for a blood clot does not demonstrate that the notes, on the whole, are inconsistent with Dr. Edwards' opinion. Indeed, although it is unclear exactly which note the ALJ relied on because there are two from May 2011, see Tr. at 547-48, it appears that in both, the doctor was concerned only with resolving the immediate issue of the blood clot. In addition, the undersigned cannot discern how Plaintiff's documented desire to lose weight in a "fun" way makes Dr. Edwards' notes inconsistent with his opinion.

-14-

As to the ALJ's other reasons for finding the doctor's opinion inconsistent with his notes, the ALJ was inaccurate in stating that there was no change in Plaintiff's medication regimen.  As summarized above, Plaintiff's medications have been switched a number of times, either due to intolerance or failure to alleviate the pain.  While there may not have been any immediate surgical recommendations, Dr. Bates (the orthopaedist) opined on April 8, 2011 that surgery is not "needed as most of her pain . . . is due to inflammatory arthritis."[12] Tr. at 835.  Accordingly, the ALJ's reasons for finding the opinion to be inconsistent with the notes are not supported by substantial evidence.

Next, the ALJ stated as a reason for discounting Dr. Edwards' opinion that "the majority of his testimony pertains to [Plaintiff's] ability to return to her past work as a nurse and does not address other occupations."  Tr. at 25.  Although it is true that Dr. Edwards used as a point of reference Plaintiff's past work as a nurse, it is also true, as summarized above, that Dr. Edwards testified regarding numerous ways in which her impairments and corresponding symptoms, as well as the side effects of her medications, would affect her ability to perform various job-related functions of any work.  The ALJ's reason in this regard is therefore inaccurate and unsupported.

Finally, the ALJ inappropriately discounted Dr. Edwards' opinion by contrasting it with a couple of Plaintiff's activities from September 2010.  Specifically, the ALJ stated that Plaintiff, in September 2010, "hurt her knee dancing and on another occasion, she hurt herself while trying to mount a horse," which activities the ALJ found "simply inconsistent with

---

[12]     Plaintiff had actually "expressed interest in diagnostic arthroscopy" to Dr. Bates on that date, and he determined that they should "hold off" on an arthroscopy until she tried "strengthening exercises and the other therapy."  Tr. at 835.

Dr. Edward[s'] testimony that [Plaintiff] can barely walk the halls of his office and is unable to perform even sedentary work." Tr. at 25. As explained above, Plaintiff's participation in these activities in September 2010 is what precipitated her knee pain and is why she is alleging a disability beginning September 24, 2010. The ALJ, therefore, should not have cited Plaintiff's participation in these activities prior to her alleged onset disability date as a reason for rejecting Dr. Edwards' sworn testimony about his personal observations during the relevant time period and about his corresponding opinions.

In sum, the ALJ's reasons for discounting Dr. Edwards' sworn testimony are not supported by substantial evidence.

## V.  Conclusion

Upon due consideration, it is

**RECOMMENDED**:

1.     That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)     Reevaluate Dr. Edwards' opinion; if the opinion is discounted, provide specific reasons, supported by substantial evidence, for discounting it;
>
> (B)     If appropriate, address the other issue raised by Plaintiff in this appeal; and
>
> (C)     Take such other action as may be necessary to resolve these claims properly.

2.     That the Clerk be further directed to close the file.

3.    That the Court include in an Order disposing of this appeal a direction that if benefits are awarded on remand and Plaintiff's counsel deems it appropriate to move for § 406(b) fees, such an application should be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on July 9, 2015.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Hon. Marcia Morales Howard
United States District Judge

Counsel of record